FILED
2008 OCT 10 PM 3:05
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2008 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>NICHOLAS LAKES,<br>aka Dmitry Livshits, and<br>VIACHESLAV BERKOVICH,<br>Defendants. | CR No. 08-08-01208<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1030(a)(4): Computer Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done] |

The Grand Jury charges:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment:

**ENTITIES AND INDIVIDUALS**

DEFENDANT NICHOLAS LAKES

1. Defendant NICHOLAS LAKES, also known as ("aka") Dmitry Livshits (hereinafter "defendant LAKES") was an individual residing in Glendale, California, within the Central District of California.

WLH:RLC


2. Defendant LAKES possessed at least one computer at his residence and accessed the Internet from a digital subscriber line ("DSL") located there.

DEFENDANT VIACHESLAV BERKOVICH

3. Defendant VIACHESLAV BERKOVICH (hereinafter "defendant BERKOVICH") was an individual residing in Los Angeles, California, within the Central District of California.

4. Defendant BERKOVICH possessed at least one computer at his residence and accessed the Internet from a DSL line located there.

SAFERSYS

5. SAFER is the abbreviated name of the Safety and Fitness Electronic Records System, which is accessible through Safersys.org or safer.fmcsa.dot.gov, which are addresses for an Internet website maintained by the Federal Motor Carrier Safety Administration ("FMCSA") of the United States Department of Transportation. The FMCSA requires brokers and motor carriers, including trucking companies, to register on SAFER and provide information that includes the business name, business address, and business telephone number.

6. At the times relevant to this Indictment, a user was required to provide a name and a valid credit card number on the SAFER System website before the system would allow the user to change registration information for a company that was registered on the system.

LOADBOARDS

7. "Loadboards" are Internet websites that advertise available loads that are available for transport. Brokers

typically list loads available for carriers to transport, and carriers make bids to carry those loads. "Loadboards" include Internet Truckstop, DAT Connect.com and Getloaded.

COMPUTER TERMINOLOGY

Domain Name Server ("DNS")

8. A "domain name" identifies where on the Internet a domain, or computer, is located. Domain names typically are easy-to-recall words or phrases as opposed to numerical Internet Protocol ("IP") addresses, which are used by computers to identify addresses on the Internet. A "domain name server" ("DNS") translates domain names to IP addresses and vice versa. Domain name servers maintain central lists of domain names and associated IP addresses. When computer users look for a particular domain by inputting the appropriate domain name, the computer seeks out a domain name server to translate or "map" the domain name to the appropriate IP address. The request is then relayed to other domain name servers on the Internet until the appropriate IP address is found.

Internet Hosting Companies

9. Internet hosting companies provide individuals or businesses with large scale access to the Internet through the use of computers large enough to provide one or more services to other computers on the Internet. These large computers are commonly referred to as "servers." Use of a server often is combined with access to a larger network of computers. The services of Internet hosting companies enable customers to conduct activity on the Internet, such as the ability to operate web sites, administer networks, or run e-mail systems.

Internet Protocol Address

10. An "Internet Protocol Address" or "IP address" is a unique numeric address used by computers on the Internet. An IP address is designated by a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses, which they assign to their subscribers. No two computer networks on the Internet can have the same IP address at the same time. Thus, at any given moment, an IP address is unique to the computer network to which it has been assigned.

Internet Service Providers

11. ISPs offer their customers access to the Internet using telephone or other telecommunications lines. ISPs provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through their ISPs' servers. ISPs remotely store electronic files on behalf of their customers and may provide other services unique to each particular ISP.

Server

12. A "server" is a centralized computer that provides services for other computers connected to it via a network. The other computers attached to a server sometimes are called "clients." In a large company, it is common for individual employees to have client computers at their desktops. When the employees access their e-mail, or access files stored on the

network itself, those files are pulled electronically from the server, where they are stored, and are sent to the client's computer via the network. In larger networks, it is common for servers to be dedicated to a single task. For example, a server that is configured so that its sole task is to support a World Wide Web site is known simply as a "web server."

Uniform Resource Locator ("URL")

13. The "Uniform Resource Locator" or "URL" is the unique address that identifies a computer or web page on the Internet for routing purposes, such as http://www.cnn.com.

COUNTS ONE THROUGH TWO

[18 U.S.C. §§ 1030(a)(4), 2]

14. The Grand Jury repeats and re-alleges all of the introductory allegations set forth in paragraphs 1 through 13 of this Indictment.

THE SCHEME TO DEFRAUD

15. Beginning in or about January 2007 and continuing through on or about September 25, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant LAKES and defendant BERKOVICH (collectively, "defendants" or "defendants LAKES and BERKOVICH"), together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud individuals and companies with whom defendants and their co-schemers dealt over the Internet, as to material matters, and to obtain money and property from those individuals and companies by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

16. The fraudulent scheme was carried out in substance in the following manner:

a. Defendants and their co-schemers used the Internet to access the SAFER System website and registered their own trucking and transportation brokerage companies, such as Cargoland Brokerage, Inc., Progressive Trucking, Vega Trucking, and Barkfelt Transport. In fact, defendants and their co-schemers did not operate any trucking and transportation

brokerage business and intended to defraud brokers of the transportation fee.

b. Defendants and their co-schemers used the Internet to access the SAFER System website and changed registration information for unrelated trucking and brokerage companies already registered in the SAFER System to create the impression that the unrelated companies were affiliated with defendants' companies. In doing so, defendants and their co-schemers would enter on the SAFER System for the unrelated companies telephone numbers and e-mail addresses that in fact belonged to them and did not belong to the unrelated companies.

c. Defendants and their co-schemers accessed loadboards in the names of their companies and posed as carriers. After finding a load on a loadboard that was advertised by a broker, defendants and their co-schemers then entered into a contract with the broker to transport the advertised load. Defendants and their co-schemers never informed the broker that it was their intention to "double broker" the load to another carrier and collect the transportation fee, without paying any sum to the actual carrier.

d. Defendants and their co-schemers then posed as a broker, sometimes in the name of a different company, and accessed the same or different loadboard to advertise, or "double-broker" the same load to a carrier. Defendants and their co-schemers never informed the carrier that they had no intention of paying the negotiated transportation fee to the carrier.

e. After the carrier with whom defendants and their co-schemers contracted to transport the load completed the

trucking job, defendants and their co-schemers would collect the trucking fee from the original broker and refuse to pay the carrier to whom they had "double-brokered" the load.

17. To execute the above-described scheme, defendants LAKES and BERKOVICH and co-schemers known and unknown to the Grand Jury knowingly participated in and aided and abetted the following materially false and misleading acts, among others, in the Central District of California and elsewhere:

Stevens Transport/RK Trucking

a. On or about January 15, 2008, defendants LAKES and BERKOVICH accessed the Internet Truckstop website.

b. On or about January 15, 2008, defendants LAKES and BERKOVICH, in the name of Vega Trucking, agreed with broker Stevens Transport to transport a load for $3,400.

c. On or about January 15, 2008, defendants LAKES and BERKOVICH accessed the Internet Truckstop website and, in the name of Barkfelt Transport, advertised the load they had agreed to carry for Stevens Transport.

d. On or about January 15, 2008, defendants LAKES and BERKOVICH agreed with carrier RK Trucking for RK Trucking to transport the load for $4,000.

e. On or about February 14, 2008, defendants LAKES and BERKOVICH received Bank of America check # 380165 from Stevens Transport for $3,390.

RHO Logistics/Reno and Company

f. On or about January 15, 2008, defendants LAKES and BERKOVICH accessed the Internet Truckstop website.

  g. On or about January 15, 2008, defendants LAKES and BERKOVICH, in the name of Vega Trucking, agreed with broker RHO Logistics to transport a load for $3,500.

  h. On or about January 16, 2008, defendants LAKES and BERKOVICH accessed the Internet Truckstop website and, in the name of Barkfelt Transport and advertised the load they had agreed to carry for RHO Logistics.

  i. On or about January 16, 2008, defendants LAKES and BERKOVICH, in the name of Barkfelt Transport, agreed with carrier Reno and Company for Reno and Company to transport the load for $4,300.

  j. On or about February 12, 2008, defendants LAKES and BERKOVICH received East West Bank check # 31097 from RHO Logistics for $3,325.

<u>Coyote Logistics/Charles Baker Trucking</u>

  k. On or about May 21, 2008, defendants LAKES and BERKOVICH accessed a loadboard website.

  l. On or about May 21, 2008, defendants LAKES and BERKOVICH, in the name of Ligit Transportation, agreed with broker Coyote Logistics to transport a load for $2,100.

  m. On or about May 21, 2008, defendants LAKES and BERKOVICH accessed the Getloaded website and, in the name of Loadbook, Inc., advertised the load they had agreed to carry for Coyote Logistics.

  n. On or about May 21, 2008, defendants LAKES and BERKOVICH, in the name of Loadbook, Inc., agreed with carrier Charles Baker Trucking for Charles Baker Trucking to transport the load for $2,600.

   o. On or about July 9, 2008, defendants LAKES and BERKOVICH received Bank of America check # 25080 from Coyote Logistics for $2,100.

Activity on September 25, 2008

p. On or about September 25, 2008, defendants LAKES and BERKOVICH were linked together by a computer connection between their residences. Defendants LAKES and BERKOVICH had each accessed an Internet loadboard website and were each operating a Transcore Freight software program used to track truckloads.

ACCESSING OF A PROTECTED COMPUTER

18. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAKES and BERKOVICH, and others known and unknown to the Grand Jury, aiding and abetting one another, knowingly and with the intent to defraud accessed without authorization and exceeded any authorized access to a protected computer, specifically, servers belonging to the FMCSA, to further an intended fraud and obtain things of value, that is, by accessing the SAFER System website and registering companies and changing information for previously-registered companies, accessing loadboards as one of those companies to enter into transportation contracts with brokers to carry freight for a fee, and accessing loadboards to enter into a second set of transportation contracts with other trucking companies to carry those loads but which companies defendants did not intend to pay.

| COUNT | DATE | UNAUTHORIZED ACCESS |
| --- | --- | --- |
| ONE | 6/6/05 | Accessed SAFER System website in the name of "Justin Paltrow" to register Cargoland Brokerage, Inc. |
| TWO | 1/29/07 | Accessed SAFER System website in the name of "Justin Paltrow" to change registration information for Freight VIT |

COUNTS THREE THROUGH FIVE

[18 U.S.C. §§ 1341, 2]

19. The Grand Jury repeats and re-alleges all of the introductory allegations set forth in paragraphs 1 through 13 of this Indictment.

THE SCHEME TO DEFRAUD

20. Beginning in or about January 2007 and continuing through on or about September 25, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant LAKES and defendant BERKOVICH, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud individuals and companies with whom defendants and their co-schemers dealt over the Internet, as to material matters, and to obtain money and property from those individuals and companies by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

21. The fraudulent scheme was operated and was carried out, in essence, as set forth in paragraphs 16 and 17 of this Indictment.

USE OF THE MAILS

22. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAKES and BERKOVICH, for the purpose of executing and attempting to execute the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by

the United States Postal Service according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| THREE | 2/12/08 | Mailing of check from RHO Logistics, in El Paso, Texas, to Vega Trucking, in La Canada, California. |
| FOUR | 2/14/08 | Mailing of check from Stevens Transport, in Dallas, Texas, to Vega Trucking, in La Canada, California. |
| FIVE | 7/9/08 | Mailing of check from Coyote Logistics, in Lake Forest, Illinois, to Ligit Transportation, in Los Angeles, California. |

COUNTS SIX THROUGH TEN

[18 U.S.C. §§ 1343, 2]

23. The Grand Jury repeats and re-alleges all of the introductory allegations set forth in paragraphs 1 through 13 of this Indictment.

THE SCHEME TO DEFRAUD

24. Beginning in or about January 2007 and continuing through on or about September 25, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant LAKES and defendant BERKOVICH, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud individuals and companies with whom defendants and their co-schemers dealt over the Internet, as to material matters, and to obtain money and property from those individuals and companies by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

25. The fraudulent scheme was operated and was carried out, in essence, as set forth in paragraphs 16 and 17 of this Indictment.

USE OF THE WIRES

26. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAKES and BERKOVICH, for the purpose of executing the above-described scheme to defraud and attempting to do so, transmitted and willfully caused the transmission, and aided and

abetted the transmission of, the following by means of wire communications in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| SIX | 1/15/08 | Electronic communication between AT&T Internet Services server in San Antonio, Texas, and Internet Truckstop server in Boise, Idaho, regarding load advertised by Stevens Transport |
| SEVEN | 1/15/08 | Electronic communication between AT&T Internet Services server in San Antonio, Texas, and Internet Truckstop server in Boise, Idaho, regarding load advertised by Barkfelt Transport |
| EIGHT | 1/15/08 | Electronic communication between AT&T Internet Services server in San Antonio, Texas, and Internet Truckstop server in Boise, Idaho, regarding load advertised by RHO Logistics |
| NINE | 1/16/08 | Electronic communication between AT&T Internet Services server in San Antonio, Texas, and Internet Truckstop server in Boise, Idaho, regarding load advertised by Barkfelt Transport |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TEN | 5/21/08 | Electronic communication between AT&T Internet Services server in San Antonio, Texas, and Getloaded server in Midlothian, Virginia, regarding load advertised by Loadbook, Inc. |

A TRUE BILL

/S/

Foreperson

THOMAS P. O'BRIEN
United States Attorney

Christine C. Ewell

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

WESLEY L. HSU
Assistant United States Attorney
Chief, Cyber and Intellectual Property Crimes Section

MARK KRAUSE
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual Property Crimes Section

RONALD L. CHENG
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section